Slip Op. 19-30

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| STUPP CORPORATION ET AL., | |
|     Plaintiffs and Consolidated Plaintiffs, | |
| and | |
| MAVERICK TUBE CORPORATION ET AL., | |
|     Plaintiff-Intervenor and Consolidated Plaintiff-Intervenors, | Before: Claire R. Kelly, Judge |
| v. | Consol. Court No. 15-00334 |
| UNITED STATES, | |
|     Defendant, | |
| and | |
| SEAH STEEL CORPORATION ET AL., | |
|     Defendant-Intervenors and Consolidated Defendant-Intervenors. | |

## OPINION AND ORDER

[Denying SeAH Steel Corporation's motion for reconsideration.]

Dated: March 7, 2019

Jeffrey Michael Winton, Law Office of Jeffrey M. Winton PLLC, of Washington, DC, for defendant-intervenor, consolidated plaintiff, and consolidated defendant-intervenor SeAH Steel Corporation.

Elizabeth Anne Speck, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant.  With her on the brief were

Consol. Court No. 15-00334                                                      Page 2

Claudia Burke, Assistant Director, Jeanne E. Davidson, Director, and Joseph H. Hunt, Assistant Attorney General.  Of Counsel on the brief was Reza Karamloo, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Kelly, Judge: Before the court is a motion for reconsideration filed by SeAH Steel Corporation ("SeAH")[1] pursuant to Rule 59(e) of the Rules of the U.S. Court of International Trade ("USCIT").[2]  See [SeAH's] Mot. [ ] Reconsideration Ct.'s Jan. 8, 2019 Order, Jan. 28, 2019, ECF No. 127 ("SeAH's Mot.").  SeAH requests that the court reconsider its decision sustaining the U.S. Department of Commerce's ("Department" or "Commerce") application of its differential pricing analysis and revise Slip Opinion 19-2, dated January 8, 2019, accordingly.  See Stupp Corp. v. United States, 43 CIT __, __, Slip Op. 19-2 at 7–11, 20–23, 34 (Jan. 8, 2019) ("Stupp I").  In Stupp I, the court addressed various challenges to the final determination in the less than fair value ("LTFV") investigation of imports of welded line pipe from the Republic of Korea ("Korea") for the period October 1, 2013, through September 30, 2014, which resulted in an antidumping duty order ("ADD").  See Welded Line Pipe From [Korea], 80 Fed. Reg. 61,366 (Dep't Commerce Oct. 13, 2015) (final determination of sales at [LTFV]), as amended by Welded Line Pipe From [Korea], 80 Fed. Reg. 69,637 (Dep't Commerce Nov. 10, 2015) (amended final determination of sales at [LTFV]) and accompanying Issues & Decision Mem. for the

---

[1] SeAH is the defendant-intervenor, consolidated plaintiff, and consolidated defendant-intervenor in this consolidated action.

[2] Pursuant to USCIT R. 59(e), a party may file motion for reconsideration after judgment is entered.  No judgment has been entered in this action.  However, the court did, in Stupp I, sustain Commerce's application of its differential pricing analysis and its decision is final as to that issue. See Stupp I, 43 CIT at __, Slip Op. 19-2 at 12–20, 34.  The court will therefore rule on SeAH's motion.

Consol. Court No. 15-00334                                                                    Page 3

Final Affirmative Determination in the [LTFV] Investigation of Welded Line Pipe from [Korea], A-580-876, (Oct. 5, 2015), ECF No. 30-3 ("Final Decision Memo"); Welded Line Pipe From [Korea] and the Republic of Turkey, 80 Fed. Reg. 75,056, 75,057 (Dep't Commerce Dec. 1, 2015) ([ADD] orders).  Specifically, in Stupp I, the court denied SeAH's three challenges to Commerce's final determination.  See Stupp I, 43 CIT at __, Slip Op. 19-2 at 7–23, 34; see generally Br. SeAH [ ] Supp. Rule 56.2 Mot. J. Agency R. at 26–50, July 5, 2016, ECF No. 40 ("SeAH's Moving Br.").  Relevant here, in Stupp I, the court held that Commerce's application of its differential pricing analysis was in accordance with law and supported by substantial evidence.  See Stupp I, 43 CIT at __, Slip Op. 19-2 at 12– 20, 34.[3]  SeAH contends that Commerce's differential pricing analysis is merely a policy, necessitating Commerce to, on a case-by-case basis, justify and support with substantial evidence, "any factual findings embodied in the 'Differential Pricing Analysis.'"  SeAH's Mot. at 4.   Defendant contends that SeAH failed to demonstrate that the court's determination was the result of "manifest error" and should be denied.  See Def.'s Resp. Opp'n Def.-Intervenor [SeAH's] Mot. Reconsideration at 4–5, Feb. 15, 2019, ECF No. 130.  For the reasons that follow, SeAH's motion is denied.

---

[3] The court also sustained Commerce's decision to reject portions of SeAH's case brief to the agency and calculation of credit expenses on SeAH's back-to-back sales.  See Stupp I, 43 CIT at __, Slip Op. 19-2 at 7–11, 20–23, 34.  SeAH's motion for reconsideration does not request the court reconsider and revise its determinations as to those two challenges.

Consol. Court No. 15-00334                                                      Page 4

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012)[4] and 28 U.S.C. § 1581(c) (2012), which grant the Court authority to review actions contesting the final determination in an investigation of an antidumping duty order.

A motion for reconsideration rests within the sound discretion of the court.  Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990).  The court will grant such a motion "to address a fundamental or significant flaw in the original proceeding." USEC, Inc. v. United States, 25 CIT 229, 230, 138 F. Supp. 2d 1335, 1336–37 (2001) (citations omitted).

## DISCUSSION

"[A] motion for reconsideration serves as 'a mechanism to correct a significant flaw in the original judgment' by directing the court to review material points of law or fact previously overlooked[.]" RHI Refractories Liaoning Co. v. United States, 35 CIT __, __, 752 F. Supp. 2d 1377, 1380 (2011) (quoting United States v. UPS Customhouse Brokerage, Inc., 34 CIT 745, 748, 714 F. Supp. 2d 1296, 1301 (2010)).  Although a court may exercise its "discretion 'to rectify a significant flaw in the conduct of the original proceeding, a court should not disturb its prior decision unless it is manifestly erroneous.'" Marvin Furniture (Shanghai) Co. v. United States, 37 CIT __, __, 899 F. Supp. 2d 1352, 1353 (2013) (quoting Dorsey v. U.S. Dep't Agric., 32 CIT 270, 270 (2008)).  Grounds for

---

[4] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

Consol. Court No. 15-00334 Page 5

finding a prior decision to be "manifestly erroneous" include "an intervening change in the controlling law, the availability of new evidence, the need to correct a clear factual or legal error, or the need to prevent manifest injustice." Ford Motor Co. v. United States, 30 CIT 1587, 1588 (2006). A motion for reconsideration, however, is not an opportunity for the losing party "to re-litigate the case or present arguments it previously raised." Totes–Isotoner Corp. v. United States, 32 CIT 1172, 1173, 580 F. Supp. 2d 1371, 1374 (2008).

At the root of SeAH's motion is its belief that the court transgressed the principles of administrative law by allowing Commerce to apply its differential pricing analysis without necessitating that Commerce support, with substantial evidence, the "factual findings" that underlay the analysis. See SeAH's Mot. at 1–2. SeAH contends that the court abandoned the substantial evidence standard when evaluating whether the individual components of Commerce's differential pricing analysis can establish the existence of significant price differences constituting a pattern.[5] SeAH's motion for

---

[5] In arguing that Stupp I applied the incorrect standard of review, SeAH reiterates the rationale it relied upon in its moving brief and which the court addressed in Stupp I. Specifically, that Commerce must support with substantial evidence its reliance on the "factual findings" imbedded within Commerce's differential pricing analysis. These "factual findings," SeAH contends, include the differential pricing analysis' use of effect size, Cohen's d, and various numerical thresholds. Compare SeAH's Mot. at 6–7, with SeAH's Moving Br. at 27. The court addressed this argument in Stupp I:

> SeAH argues that because Commerce's differential pricing analysis is not the result of formal rule making, Commerce must justify its use on a case-by-case basis. See SeAH's [Moving] Br. at 26–32. Commerce has explained the reasonableness of the specific thresholds it employs in its differential pricing analysis. See Final Decision Memo at 22–25. The reasonableness of the steps underlying the analysis, as applied by Commerce, has been addressed by this Court and upheld by the U.S. Court of Appeals for the Federal Circuit. See Apex

(footnote continued)

reconsideration demonstrates both a misreading of Stupp I and a misunderstanding of

how this Court reviews methodologies Commerce develops in response to meeting its

statutory obligations.

The relevant statute provides that Commerce may rely on the Average-to-

Transaction ("A-to-T") methodology if

> (i) there is a pattern of export prices (or constructed export prices) for
> comparable merchandise that differ significantly among purchasers,
> regions, or periods of time, and

> (ii) [Commerce] explains why such differences cannot be taken into account
> using a method described in paragraph (1)(A)(i) [(Average-to-Average)] or
> [(1)(A)(i)](ii) [(Transaction-to-Transaction)].

19 U.S.C. § 1677f-1(d)(1)(B)(i)–(ii).  As the court explained in Tri Union, neither the statute

nor Commerce's regulations direct Commerce on how it is to determine whether the two

statutory preconditions have been met.  Tri Union Frozen Prods., Inc. v. United States,

40 CIT __, __, 163 F. Supp. 3d 1255, 1297–98 (2016), aff'd, 741 F. App'x 801 (Fed. Cir.

2018) (per curiam).  As a result, Commerce developed a methodology, which it calls the

differential pricing analysis, to "evaluate whether the conditions for the A-T exception are

met[.]"  Apex Frozen Foods Private Ltd. v. United States, 40 CIT __, __, 144 F. Supp. 3d

1308, 1316 (2016) (citation omitted), aff'd, 862 F.3d 1337 (Fed. Cir. 2017).  "As long as

the agency's methodology and procedures are reasonable means of effectuating the

---

[Frozen Foods Private Ltd. v. United States], 862 F.3d [1337,] 1345–51 [(Fed. Cir.
2017)]; Apex [Frozen Foods Private Ltd. v. United States], 41 CIT [ __ ,] __, 208
F. Supp. 3d [1398,] 1410–17 [(2017)]; Tri Union, 40 CIT at __, 163 F. Supp. 3d at
1297–1310, aff'd, 741 F. App'x 801 (Fed. Cir. 2018) (per curiam).

Stupp I, 43 CIT at __, Slip Op. 19-2 at 17 n.18.  A motion for reconsideration is not an opportunity
for SeAH to relitigate a previously addressed issue.

statutory purpose, and there is substantial evidence in the record supporting the agency's conclusions, the court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." Ceramica Regiomontana, S.A. v. United States, 10 CIT 399, 404–05, 636 F. Supp. 961, 966 (1986) (citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843 (1984); Abbott v. Donovan, 6 CIT 92, 570 F. Supp. 41, 46–47 (1983), aff'd, 810 F.2d 1137, 1139 (Fed. Cir. 1987)). Further, "complex economic and accounting decisions of a technical nature" that Commerce makes are afforded discretion, the differential pricing analysis constitutes "precisely" that kind of decision, and in reviewing such decisions, this court inquires "whether Commerce's methodological choice in carrying out its directive is reasonable." Tri Union, 40 CIT at __, 163 F. Supp. 3d at 1300.

Commerce's differential pricing analysis occurs in two stages. The first stage is bifurcated to address two separate questions posed by 19 U.S.C. § 1677f-1(d)(1)(B), namely, whether (i) there are significant price differences and (ii) there is a pattern to the price differences. See Final Decision Memo at 11; Decision Mem. for the Prelim. Determination in the [ADD] Investigation of Welded Line Pipe from [Korea] at 7–8, A-580-876, PD 305, bar code 3277027-01 (May 14, 2015) ("Prelim. Decision Memo"). It is these two determinations—whether price differences are significant and whether those differences form a pattern—that SeAH argues are factual findings embedded in Commerce's differential pricing analysis and for which substantial evidence must be proffered on every record. However, what SeAH refers to as factual findings embedded in the differential pricing analysis are actually interpretative choices Commerce made to

implement 19 U.S.C. § 1677f-1(d)(1)(B) because the statutory terms "significant" and "pattern" are undefined and are ambiguous.[6]   Congress delegates discretion to the agency to make such interpretive choices when the terms of the statute are ambiguous. See Chevron, 467 U.S. at 843–45.  Here, the agency's choice is that a price difference is significant if it passes what the agency refers to as Cohen's d test and that there is a pattern if the ratio test is satisfied.  See Final Decision Memo at 7–13, 19–26; Prelim. Decision Memo at 7–8.  Commerce must, of course, still explain why these choices are reasonable.  Ceramica, 10 CIT at 404–05, 636 F. Supp. at 966.  The Court of Appeals for the Federal Circuit, per curiam, affirmed Tri Union's holding that Commerce reasonably explained why its Cohen's d test is able to identify significant price differences and why its ratio test is able to evaluate whether the extent of the identified significant price differences constitutes a pattern.  Tri Union, 741 F. App'x 801, aff'g, 40 CIT at __, 163 F. Supp. 3d at 1297–1301, 1308–09.  The second stage of the differential pricing analysis interprets 19 U.S.C. § 1677f-1(d)(1)(B)(ii) and is called the meaningful difference test. Although SeAH does not challenge Stupp I's holding sustaining Commerce's application of this test, the Court of Appeals for the Federal Circuit has held that Commerce's rationale for applying the test was reasonable.  Apex Frozen Foods Private Limited v. United States, 862 F.3d 1337, 1346–49 (Fed. Cir. 2017).  Accordingly, the Court of

---

[6] SeAH mistakenly argues that the individual components of Commerce's differential pricing analysis, e.g., its use of effect size, Cohen's d, and various numerical thresholds, are "factual findings" that must be supported by substantial evidence in every case.  A methodology is not a factual finding; it is an approach to finding facts.  The words of the relevant statute allow for the approach chosen by Commerce.

Appeals for the Federal Circuit has found that all components of the differential pricing

analysis are reasonable mechanisms for Commerce to satisfy the statute.

Finally, the court did not, as SeAH contends, "h[o]ld that the substantial evidence

requirement did not apply in this case because the 'Differential Pricing Analysis' is simply

an interpretation of a statutory provision, which must be upheld if the Court finds that it is

'reasonable.'" SeAH's Mot. at 5 (citing Stupp I, 43 CIT at __, Slip Op. 19-2 at 13–14).

SeAH's characterization of the holding reveals its misunderstanding of when this Court

applies the substantial evidence standard.  The Court reviews whether the outputs of

Commerce's methodology are supported by substantial evidence on this record; as it did

in Stupp I.  The Court does not review whether Commerce's methodology, which is an

interpretation of a statute, is supported by substantial evidence.  Instead, the court

evaluates whether the methodology reasonably implements a given statutory directive.

SeAH's reading of the court's holding is likely colored by its position, which is based on a

false premise, that the differential pricing analysis is merely a general policy statement

and as such, "must be reviewed as if the policy had never been adopted."  SeAH's Mot.

at 2–3 (citing and quoting Pac. Gas & Elec. Co. v. Fed. Power Comm'n, 506 F.2d 33, 38

(D.C. Cir. 1974); Nat'l Mining Ass'n v. McCarthy, 758 F.3d 243 (D.C. Cir. 2014)).  The

differential pricing analysis is not a policy; it is the result of Commerce interpreting 19

U.S.C. § 1677f-1(d)(1)(B) and devising a methodology to effectuate that interpretation.

The statute affords Commerce the ability to interpret the statutory terms absent rule

Consol. Court No. 15-00334                                                   Page 10

making.[7]  Apex, 40 CIT at __, 144 F. Supp. 3d at 1320–21; see also Chevron, 467 U.S. at 843–45.  It would be inappropriate to review the methodology itself pursuant to the substantial evidence standard.  Accordingly, SeAH failed to demonstrate "manifest error" with the court's reasoning for sustaining Commerce's application of the differential pricing analysis in Stupp I.

**CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that SeAH's motion for reconsideration is denied.


                                         /s/ Claire R. Kelly
                                       Claire R. Kelly, Judge

Dated: March 7, 2019
      New York, New York

---

[7] Further, given that Commerce's methodology continues to be developed, it may not be appropriate for the court to rigidify it in this case.  See SEC v. Chenery, 332 U.S. 194, 202–03 (1947); Apex, 40 CIT at __, 144 F. Supp. 3d at 1320–21.