Slip Op. 19-134

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| STUPP CORPORATION ET AL.,<br><br>    Plaintiffs and Consolidated Plaintiffs,<br><br>and<br><br>MAVERICK TUBE CORPORATION ET AL.,<br><br>    Plaintiff-Intervenor and Consolidated Plaintiff-Intervenors,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>SEAH STEEL CORPORATION ET AL.,<br><br>    Defendant-Intervenors and Consolidated Defendant-Intervenors. | Before: Claire R. Kelly, Judge<br><br>Consol. Court No. 15-00334 |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's remand determination in the less than fair value investigation of imports of welded line pipe from the Republic of Korea.]

Dated: October 21, 2019

Gregory James Spak, White & Case LLP, of Washington, DC, for Maverick Tube Corporation. With him on the brief were Frank J. Schweitzer, Kristina Zissis, Luca Bertazzo, and Matthew W. Solomon.

Elizabeth Anne Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were Claudia Burke, Assistant Director, Jeanne E. Davidson, Director, and Joseph H. Hunt, Acting Assistant Attorney General. Of Counsel on the brief was Reza Karamloo, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Jaehong David Park, Arnold & Porter LLP, of Washington, DC, for Hyundai Steel Company. With him on the brief was Henry D. Almond. Consulting on the brief was Phyllis L. Derrick.

Kelly, Judge: Before the court for review is the U.S. Department of Commerce's ("Department" or "Commerce") remand redetermination filed pursuant to the court's order in Stupp Corp. v. United States, 43 CIT __, __, 359 F. Supp. 3d 1293, 1313–14, Slip Op. 2019-2 at 34–35 (2019) ("Stupp I"). See also Final Results of Redetermination Pursuant to Ct. Remand Order Confidential Version, May 2, 2019, ECF No. 134 ("Remand Results"). In Stupp I, the court sustained in part and remanded in part Commerce's final determination in the less than fair value ("LTFV") investigation of imports of welded line pipe from the Republic of Korea ("Korea") for the period of October 1, 2013, through September 30, 2014. See Welded Line Pipe From [Korea], 80 Fed. Reg. 61,366 (Dep't Commerce Oct. 13, 2015) (final determination of sales at [LTFV]), as amended by Welded Line Pipe From [Korea], 80 Fed. Reg. 69,637 (Dep't Commerce Nov. 10, 2015) (amended final determination of sales at [LTFV]) ("Amended Final Determination") and accompanying Issues & Decision Memo for the Final Affirmative Determination in the [LTFV] Investigation of Welded Line Pipe from [Korea], A-580-876, (Oct. 5, 2015), ECF No. 30-3. ("Final Decision Memo"); Welded Line Pipe From [Korea] and the Republic of Turkey [("Turkey")], 80 Fed. Reg. 75,056, 75,057 (Dep't Commerce Dec. 1, 2015) (antidumping duty orders). Specifically, the court ordered Commerce to further explain

or reconsider its decision to include certain local sales in Hyundai HYSCO's ("HYSCO")[1] home market sales database. Stupp I, 43 CIT at __, 359 F. Supp. 3d at 1313–1314. The court also ordered Commerce to review and determine which portions of Maverick Tube Corporation's ("Maverick") supplemental case brief should be retained and placed on the administrative record. Id.

On remand, Commerce permitted Maverick to place the entirety of its supplemental case brief on the record. See Remand Results at 3; see also Letter from [Commerce] to Interested Parties Pertaining to Interested Parties Open Record for Suppl. Case Br. and Rebuttal, PD 1, bar code 3790211-01 (Feb. 6, 2019). Further, after examining record evidence pursuant to the court's instructions in Stupp I, Commerce decided to remove the challenged local sales from HYSCO's home market database. Remand Results at 4–7. Despite having removed these sales, Commerce refused to reconsider HYSCO's home market viability.[2] See Remand Results at 12–13. For the following reasons, the court remands for further explanation or reconsideration its refusal to reconsider HYSCO's home market viability.

---

[1] Prior to the issuance of the final determination, HYSCO completed a merger with the Hyundai Steel Company and no longer uses the HYSCO name. See Final Decision Memo at 1 n.1. Commerce, however, continued to use the HYSCO name to refer to respondent for the purposes of this investigation. This court does the same.

[2] Maverick raised home market viability as a point of contention during the administrative proceedings. See Final Decision Memo at 40–44 ("Maverick concludes that, after excluding [the challenged] sales, HYSCO's home market will be found not viable for purposes of establishing [normal value]"); see also Memo Pl.-Intervenor [Maverick] Supp. Mot. J. Agency R. at 1, 5–7, 12–35, July 6, 2016, ECF No. 44.

## BACKGROUND

The court presumes familiarity with the facts of this case, as set out in the previous opinion ordering remand to Commerce, and now recounts the facts relevant to the court's review of the Remand Results.  See Stupp I, 43 CIT at __, 359 F. Supp. 3d at 1296–1300. On October 5, 2015, Commerce published its final determination pursuant to its antidumping duty ("ADD") investigation of welded line pipe from Korea.  See generally Amended Final Determination.  When calculating the weighted-average dumping margins, Commerce included certain local sales in mandatory respondent HYSCO's home market sales database.  See Stupp I, 43 CIT at __, 359 F. Supp. 3d at 1297. Maverick challenged the inclusion of these sales for failure to adequately address record evidence that the subject merchandise was to be exported without further processing.[3] Id. at 1297.

Stupp Corporation, a division of Stupp Bros., Inc., TMK IPSCO, and Welspun Tubular LLC USA, SeAH Steel Corporation, and Maverick brought a consolidated action on several motions for judgment on the agency record before this court pursuant to USCIT R. 56.2.  Defendant United States argued that Commerce appropriately included the challenged sales because HYSCO did not or could not have known that the challenged sales would be exported without further processing—as demonstrated by the fact that HYSCO did not prepare export licenses for those transactions and the challenged sales included sales to "at least one customer that may [have] further manufacture[d] HYSCO's

---

[3] Maverick sought to demonstrate that the home market was not viable for purposes of determining normal value.  See Remand Results at 12; see generally Pl.-Interv.'s Cmts.

welded line pipe prior to export."[4] See Stupp I, 43 CIT at __, 359 F. Supp. 3d at 1311 (quoting Final Decision Memo at 45). Maverick argued that Commerce's decision was not in accordance with law because it did not account for HYSCO's "imputed knowledge" of whether the challenged sales were for export. See id. at 1309.

The court remanded the matter for further explanation or reconsideration, holding that Commerce failed to diligently inquire into what the respondents knew or should have known by failing to account for such record evidence when making its determination. See Stupp I, 43 CIT at __, 359 F. Supp. 3d at 1313–14. Further, the court held that Commerce's decision to reject Maverick's supplemental case brief on the matter was an abuse of discretion and ordered Commerce to "review and place on the record those portions of Maverick's supplemental case brief that address the effect HYSCO's revisions had on the sales databases." Id. at 1312–14.

---

[4] On remand, HYSCO maintains that it did not know, nor should it have known, that the challenged local sales were for export without further manufacturing. See generally [HYSCO's] Cmts. Opp'n [Remand Results] Confidential Version, June 7, 2019, ECF No. 147 ("HYSCO's Cmts. Opp'n"). HYSCO explains that Commerce ignored its consistent reporting practices differentiating between "Local Domestic" sales and "Local Export Sales." See id. at 7–8. The latter distinction is employed when a "product is sold to a trading company for export with HYSCO's knowledge" and, in such cases, "HYSCO itself prepares the export license." Id. at 8. HYSCO alleges that the Department confirmed its reporting approach. See id. Commerce rendered its previous decision to include these sales based on this approach. See Stupp I, 43 CIT at __, 359 F. Supp. 3d at 1311. However, this court determined that relying on these practices, alone, was insufficient to determine what "[HYSCO] knew or should have known" in light of record evidence before Commerce. Id. Namely, reliance on this information amounts to an assessment of "actual knowledge," and ignores evidence of HYSCO's "imputed knowledge." See id. at 1309, 1311.

Consol. Court No. 15-00334 Page 6

On remand, Commerce reclassified the challenged local sales.[5] See Remand Results at 13–14. The exclusion of these sales resulted in a "revised estimated weighted-average dumping margin" of 6.22 percent. Id. The reclassification did not affect the calculation of the all-others rate, which remained at 4.38 percent. Id. Maverick asserts that the exclusion of the challenged sales renders the home market not viable and requires Commerce to calculate Maverick's margin using a constructed value methodology, as opposed to normal value. Remand Results at 12–13; see also 19 C.F.R. § 351.404(f) (2014).[6] Commerce, in response, explains that its practice is to "identify the appropriate basis for normal value early in a proceeding," and points to a lack of statutory or precedential authority that requires Commerce to revisit this determination. Remand Results at 13. Further, Defendant submits that Commerce is entitled to deference in the interpretation of its statutory and regulatory obligations. See Def.'s Resp. Cmts. on [Remand Results] at 9–11, Aug. 7, 2019, ECF No. 154 ("Def.'s Resp.").

---

[5] HYSCO contests Commerce's decision to reclassify the challenged local sales. See Remand Results at 7–12; see generally HYSCO's Cmts. Opp'n. HYSCO maintains that Commerce's review of the record should have been confined to consideration of HYSCO's "sales records and information," as opposed to "after-the-fact research," as Commerce typically references the former to determine whether "a home market sale will be directly exported without further manufacture." See id. at 1–2. As this court explained in Stupp I, Commerce's review "is not limited to documentation submitted by the producer[.]" See Stupp I, 43 CIT at __, 359 F. Supp. 3d at 1310 (citing INA Walzlager Schaeffler KG v. United States, 21 CIT 110, 123–25, 957 F. Supp. 251, 263–64, Slip Op. 97-12 (1997)). Rather, Commerce's review is based on an objective assessment of the particular facts and circumstances. See id. Therefore, HYSCO's arguments on remand are unpersuasive.

[6] Further citations to Title 19 of the Code of Federal Regulations are to the 2014 edition.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012)[7] and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting the final determination in an investigation of an antidumping duty order.  The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

On remand, Maverick argues that Commerce's exclusion of the challenged local sales necessitates a reconsideration of HYSCO's home market viability, Remand Results at 12, because the Department's exclusion causes the aggregate quantity of the subject merchandise to fall below the statutorily and regulatorily prescribed "five percent threshold[.]"  See Pl.-Interv. [Maverick's] Cmts. on [Remand Results] at 7, June 7, 2019, ECF No. 149 ("Pl.-Interv.'s Cmts.").  Maverick argues that the market viability determination is a "substantive obligation[,]" meant to "ensure there is a fair comparison for the calculation of accurate dumping margins."  Pl.-Interv.'s Cmts. at 4.  Commerce counters that, as a matter of practice, it determines home market viability early on in a proceeding, and declines to revisit that determination later in the proceeding.  Remand Results at 13.  For the reasons that follow, the matter is remanded to Commerce to reconsider home market viability.

---

[7] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

In an ADD Investigation, Commerce compares the export price, or the constructed export price, of the subject merchandise, to its normal value. See 19 U.S.C. § 1677b(a). Typically, the normal value is "the price at which a foreign like product is first sold . . . for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price[.]" 19 U.S.C. § 1677b(a)(1)(B)(i). However, 19 U.S.C. § 1677b directs Commerce not to use the price in the exporting country as a basis for calculation in certain circumstances. Namely, if Commerce "determines that the aggregate quantity . . . of the foreign like product in the exporting country is insufficient to permit proper comparison," Commerce shall normally look to sales from a third country. 19 U.S.C. § 1677b(a)(1)(C)(ii); see also 19 C.F.R. § 351.404(f). The statute also provides that normal value may also be based upon constructed value where it cannot be based on prices in the exporting country. 19 U.S.C. § 1677b(a)(4). The statutory provision directing use of third country sales specifically explains that the aggregate quantity of foreign like product sold in the exporting country is normally insufficient for purposes of determining normal value if it "is less than 5 percent of the aggregate quantity . . . of sales of the subject merchandise to the United States." 19 U.S.C. § 1677b(a)(1)(C).

Commerce's regulations mirror the statute. The regulations provide that, in most circumstances, the home market prices, prices in the exporting country, are the appropriate basis for determining normal value. Compare 19 C.F.R. §§ 351.404(a) and 351.404(b)(1) with 19 U.S.C. § 1677b(a)(1)(B)(i) (stating that the normal value is typically the price at which a foreign like product is first sold for consumption in the exporting

country).  If the exporting country does not constitute a viable market, Commerce may resort to a third country or constructed value. 19 C.F.R. §§ 351.404(c)(ii), (f).[8]  Under 19 C.F.R. § 351.404(b), a market is viable if Commerce "is satisfied that sales of the foreign like product in that country are of sufficient quantity to form the basis of normal value." See 19 C.F.R. § 351.404(b)(1).  Like the statute, the regulations provide that sales are normally sufficient if the aggregate quantity of sales in the exporting country is 5 percent or more of the aggregate quantity of its sales of the subject merchandise in the United States.  Compare 19 C.F.R. § 351.404(b)(2) with 19 U.S.C. § 1677b(a)(1)(C) (the former stating that 5 percent or more is normally sufficient and the latter stating that less than 5 percent is insufficient.)

Commerce failed to comply with its statutory and regulatory mandate to ensure the sufficiency of the home market as a basis for normal value.  The statutory scheme requires sufficient home market sales in order for Commerce to base normal value on the prices in the exporting country.  See 19 U.S.C. § 1677b(a)(1).  The statute does not impose a time frame within which Commerce must make a market viability determination.  Moreover, Commerce itself has recognized that although it would prefer to make a determination early in the proceeding, it may sometimes need to delay the determination or reconsider a determination.  See Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,358 (Dep't Commerce May 19, 1997) ("Notice of Final Rules 1997") (noting that Commerce "should strive to make viability determinations early in an

---

[8] The regulations specify that Commerce will normally calculate normal value based on sales to a third country rather than on constructed value if adequate information is available and verifiable. See 19 C.F.R. § 351.404(f) (citing to 19 U.S.C. § 1677b(a)(4)).

investigation or review" but also that "there may be instances in which the Department must delay or reconsider a decision on viability").

In its remand determination, Commerce explained that it would not reconsider market viability because it typically makes the determination early in the proceedings. See Remand Results at 12–13. Although it may be reasonable for Commerce to strive to make such determinations early in a proceeding,[9] the reasonableness of such a preference does not negate the statutory and regulatory requirement that home market sales be sufficient to form the basis of normal value. See 19 U.S.C. § 1677b(a)(1)(C)(ii); 19 C.F.R. 351.404(b)(2). Moreover, it would be unreasonable for Commerce to refuse to revisit its viability determination when it determines that the components of its prior determination were incorrect. Failing to reconsider viability in such cases would render judicial review meaningless.

The statute sets forth the means by which Commerce will make a fair comparison between export price and normal value. 19 U.S.C. §1677b(a). Congress requires that the prices used must permit a proper comparison. See id. The statute also delineates situations that do not permit a proper comparison. Specifically, 19 U.S.C. § 1677b(a)(1)(C) instructs that home market sales cannot be used when:

---

[9] Indeed, the Statement of Administrative Action accompanying the Uruguay Round Agreements Act envisions that such determinations would be made early in the proceeding. "The Administration intends that Commerce will normally use the five percent threshold except where some unusual situation renders its application inappropriate. A clear standard governing most cases is necessary because Commerce must determine whether the home market is viable at an early stage in each proceeding to inform exporters which sales to report." Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103–316, vol. 1, at 834 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4162 ("SAA").

      (i) the foreign like product is not sold (or offered for sale) for consumption in the exporting country as described in subparagraph (B)(i),

      (ii) the administering authority determines that the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold in the exporting country is insufficient to permit a proper comparison with the sales of the subject merchandise to the United States, or

      (iii) the particular market situation in the exporting country does not permit a proper comparison with the export price or constructed export price.

      For purposes of clause (ii), the aggregate quantity (or value) of the foreign like product sold in the exporting country shall normally be considered to be insufficient if such quantity (or value) is less than 5 percent of the aggregate quantity (or value) of sales of the subject merchandise to the United States.

19 U.S.C. § 1677b(a)(1)(C). The language of subsection (ii) is affirmative and unambiguous. Commerce cannot use home market sales where the "aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold in the exporting country is insufficient to permit a proper comparison[.]" 19 U.S.C. § 1677b(a)(1)(C)(ii). To allow Commerce to use home market sales that were insufficient to permit a proper comparison because Commerce determined such insufficiency late in its process would frustrate the purpose of the statute, i.e., to have a fair comparison.[10]

      Admittedly, Commerce is charged with determining sufficiency and has some discretion in making that determination. See 19 U.S.C. § 1677b(a)(1)(C)(ii). Congress has set forth what is normally sufficient. See 19 U.S.C. § 1677b(a)(1)(C). Home market sales must "normally" be 5 percent of the aggregate sales in order to be considered sufficient. Id.; see also 19 C.F.R. § 351.404(b)(2). The use of the word "normally"

---

[10] Following Commerce's reasoning to its logical conclusion, Commerce could determine that there were only a handful or even no home market sales and still refuse to reconsider home market viability.

indicates there may be times when Commerce may find home market sales sufficient, even if they are not 5 percent of the aggregate sales. See Notice of Final Rules 1997, 62 Fed. Reg. at 27,358 (noting that Commerce retained the word "normally" in its regulations in order to provide the Department with the flexibility to deal with unusual situations.) In such cases, Commerce may base sufficiency on some other measure, or it may accept less than 5 percent, if doing so would be reasonable under the circumstances. One such circumstance may involve the timing of the determination. If the timing of the determination regarding home market sales affects Commerce's sufficiency analysis, Commerce should explain how it affects the analysis and why its analysis is nonetheless reasonable in light of its statutory mandate.[11] Nonetheless, Commerce has discretion to determine what is sufficient, not to dispense with the requirement because of its preference to make such determinations early in the proceedings. See Remand Results at 12–13; 19 U.S.C. § 1677b(a); 19 C.F.R. §§ 351.404(a)–(c).[12] The statute mandates

---

[11] Prior to the Uruguay Round Amendments, the statute simply required that Commerce consider whether the quantity of goods sold in the home market was "so small" so as not to provide a viable comparator. H.R. Rep. No. 103-826, pt. 1, at 82–83 (1994). The Uruguay Round Amendments provided a quantitative standard recognizing that Commerce would make a determination early in a proceeding, but also recognizing that there may be cases where "sales constituting less than five percent of sales to the United States could be considered viable[.]" SAA,1994 U.S.C.C.A.N. at 4162.

[12] Defendant's argument that the statute does not affirmatively require Commerce to reconsider its viability determination and therefore the statute is ambiguous proposes an ambiguity where none exists. See Def.'s Resp. at 9–11 (citing Chevron U.S.A., Inc. v. Nat. Resources Def. Council, Inc., 467 U.S. 837, 844 (1984)). The statute's failure to affirmatively provide that Commerce must revisit a viability determination does not render section 1677b(a)(1)(C) ambiguous. Section 1677b(a)(1)(C) provides "[t]his subparagraph applies when– . . . [Commerce] determines that the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold in the exporting country is insufficient to permit a proper comparison . . ." 19 U.S.C. § 1677b(a)(1)(C)(ii).

(footnote continued)

that Commerce consider whether home market sales are sufficient for a proper comparison. If the sales are not sufficient, they cannot be used.

## CONCLUSION

Therefore, the court remands the issue to Commerce to reconsider HYSCO's home market viability.

For the foregoing reasons, it is

**ORDERED** that Commerce's remand redetermination is remanded for further consideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its second remand redetermination with the court within 90 days of this date; and it is further

**ORDERED** that the parties shall have 30 days thereafter to file comments on the second remand redetermination; and it is further

**ORDERED** that the parties shall have 15 days to file their replies to comments on the second remand redetermination.

    /s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: October 21, 2019
      New York, New York

---

Moreover, even if one could find some ambiguity in the statute more generally, Commerce's interpretation would be unreasonable. Section 1677b(a)(1)(C) identifies when Commerce cannot use home market sales. Subsection (ii) requires a sufficiency analysis to justify the use of home market sales. If the determinations that are necessary to conduct the sufficiency analysis are revisited by Commerce, then the sufficiency analysis must be revisited. Any other conclusion would read the sufficiency analysis out of the statute which would be unreasonable.